647 F.2d 1037
 25 Fair Empl.Prac.Cas. 963,
26 Empl. Prac. Dec. P 31,799
June L. BAUER, Plaintiff-Appellant,
v.
Benjamin F. BAILAR, Postmaster General, U. S. Postal
Service, Joseph F. Morris, Regional Postmaster
General, Western Region, and Peter M.
Thome, Postmaster, Englewood,
Colorado,
Defendants-
Appellees.
 No. 79-1958.
 United States Court of Appeals,
Tenth Circuit.
 April 27, 1981.
 
 Leslie M. Lawson, Feiger & Lawson, Denver, Colo. (Brenda Taylor, Lynn D. Feiger, Feiger & Lawson, Denver, Colo., with her on the brief), for plaintiff-appellant.
 William C. Danks, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., Denver, Colo., with him on the brief), for defendants-appellees.
 Before SETH, Chief Judge, McWILLIAMS and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The plaintiff, June L. Bauer, who is also the appellant, sought a supervisory position in the Englewood Post Office and was denied it. Five positions were open at the time. Mrs. Bauer asserts that she was the victim of discrimination based on gender or sex. She exhausted her administrative remedies as required by the Civil Rights Act, 42 U.S.C. § 2000e-16, and then filed a complaint in the United States District Court for the District of Colorado. She sought declaratory, injunctive and monetary relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
 
 
 2
 Following a two day trial, the trial judge ruled against Mrs. Bauer. The judge found and held that the failure to promote her was not the result of discrimination based on sex. He also rejected her claim that she was a victim of retaliation contrary to 42 U.S.C. § 2000e et seq. However, this latter aspect of the case is not now before us.
 
 
 3
 Mrs. Bauer contends that the trial court erred in failing to infer from the evidence presented that sex discrimination had been demonstrated in her prima facie case, and in failing to find that defendants' reasons for her not being promoted were pretextual. More specifically, appellant maintains that the trial court failed to sufficiently weigh:
 
 
 4
 1) statistical evidence offered,
 
 
 5
 2) subjective aspects of the selective process,
 
 
 6
 3) her experience and hence superior qualifications, and
 
 
 7
 4) the directives of the affirmative action plan which had been adopted by the defendants.
 
 
 8
 In addition, she argues that the trial court erred in requiring her to prove discriminatory intent by direct evidence.
 
 
 9
 Mrs. Bauer has been employed by the Postal Service since 1966. She has been at the Englewood branch since May, 1967. Most of her work has consisted of clerical work as a Window Distribution Clerk, providing services to people who come to the window.
 
 
 10
 In 1975, five positions for initial level supervisors in the Englewood Post Office became available. Two supervisors of mails, two supervisors of collection and delivery and one supervisor of window services were to be appointed. Supervisor of Window Services was a newly authorized position. Prior to 1975 window services were under the supervision of a finance supervisor in the morning hours and a supervisor of mails in the afternoon.
 
 
 11
 What are the requirements for obtaining a supervisory position? The requirements and procedure for selection of initial level supervisors are set forth at length in post office regulations (Ex. 13). First, an employee must have worked at least one year for the post office. Secondly, a written examination must be taken. Scoring is based on a national norm and is expressed in percentiles which represent how well each examinee performed in relation to all other examinees. Thereafter, the head of an installation in which a position is to be filled establishes a cut-off score. Applicants with adequate test scores are evaluated on work performance and supervisory potential by their immediate supervisors. Applicants who receive A ratings from their supervisors are then interviewed and evaluated by an advisory panel consisting of supervisors appointed by the installation head. The panel certifies a list of the best qualified candidates to the local postmaster who makes the final selection.
 
 
 12
 Thirty-one applicants took the initial level supervisory test in applying for any one of the five positions. The Postmaster, Mr. Peter M. Thome, established 50 as the cut-off examination score. Twenty-three of the examinees, including the four females who took the test, had scores of 50 or better. These 23 individuals were then evaluated by their immediate supervisors. Five candidates, including one of the females, failed to receive A ratings from their supervisors. Clifford L. Koon, Mrs. Bauer's immediate supervisor, had evaluated her in December 1974 and had given Mrs. Bauer a B rating. In June 1975 Mr. Thome, apparently with Mr. Koon's concurrence, upgraded Mrs. Bauer's rating to A. Thus she was one of the 18 candidates who were interviewed by the advisory panel. There were five members of the advisory panel. The members of this panel were Dorothy Eaton, Chairperson; Joseph A. Dick; Roy Thompson; Phillip Kirton, and Clifford L. Koon. Koon and Kirton were supervisors in the Englewood Post Office. The other members held supervisory level positions at other post office installations. Interviews were then given to each of the remaining candidates over a two day period. Forms were provided on which each panel member rated each interviewee on a variety of points. The testimony at the trial was that the panel considered the interviews and personnel files, including supervisor evaluations, in scoring the candidates.
 
 
 13
 Originally the panel had determined to submit nine names to Mr. Thome. Following the interviews each panel member cast nine votes by secret ballot. Candidates Chapman, Sidebottom, Martelli, Barker, Jeffers and Trujillo each received five votes. Candidates Whitcomb and Dryden each received three votes. Candidates Bauer, Kodis and Perri each received two votes, resulting in a three way tie for the ninth position. A second secret ballot was cast in which Bauer and Perri each received two votes while Kodis received one vote. The panel determined to submit a total of ten names to Postmaster Thome, including Bauer and Perri. The panel members, again by secret ballot ranked the candidates from one to ten. Although Mr. Koon ranked Mrs. Bauer second, her ranking by the other panel members placed her tenth. The other woman among the final ten, Geraldine Perri, was ranked ninth. The remaining eight candidates ranked as follows: Chapman, Sidebottom, Martelli, Barker, Jeffers, Trujillo, Whitcomb, Dryden.
 
 
 14
 The ten names were submitted to Postmaster Thome in ranked order. Thome verified that the names were in fact ranked. He learned this by inquiry to one or two panel members. The testimony was that the regulations are silent on whether an advisory panel should or should not rank candidates for promotion. Such rankings are not, however, uncommon. Postmaster Thome testified that he reviewed the list in light of his own knowledge of the candidates; that he considered the requirements of the positions to be filled and consulted with his two managers, Mr. Koon and Mr. Kirton. Thome then placed the top five ranked candidates in the positions for which he felt each was the best qualified. Bobby L. Barker was placed in the Supervisor of Window Services position.
 
 I.
 
 15
 The starting point in reviewing the decision of the trial court is to refer to the applicable procedure. The trial court's findings are entitled to very careful consideration; they are to be disturbed on appeal only if clearly erroneous. Thornton v. Coffey, 618 F.2d 686 (10th Cir. 1980); Olson v. Philco-Ford, 531 F.2d 474 (10th Cir. 1976). In the final analysis the test is whether the appellate court is left with the definite and firm conviction that a mistake has occurred.
 
 
 16
 Plaintiff argues that the trial court's decision fails to find that she had made out a prima facie case of discrimination. We shall examine the evidence in the light of both the disparate impact and the disparate treatment approaches. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977).
 
 A.
 
 17
 Consideration of plaintiff's case under the disparate impact principle.
 
 
 18
 Under the disparate impact theory, a prima facie case is established by showing that a particular job requirement or standard of selection operates to select applicants for hire or promotion in a pattern significantly different from that of the pool of applicants. Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); Woods v. North American Rockwell Corp., 480 F.2d 644 (10th Cir. 1973). Under this theory a prima facie case is established even if the job requirement at issue is facially neutral and even if no showing of intentional discrimination is made. Teamsters, supra. After such a prima facie case has been made out the burden shifts to the employer to demonstrate that the job requirement involved has a manifest relationship to the employment in question. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). The plaintiff then has an opportunity to respond to the defendant's showing that other selective methods or standards would serve the employer's legitimate interests in obtaining qualified employees without resulting in the disproportionate exclusion of a particular group.
 
 
 19
 One object of this approach is to restrict the use of subjective judgments in hiring and promotion where such a practice results over an extended period in the disproportionate non-selection of members of an aggrieved group. Rich v. Martin Marietta Corp., 522 F.2d 333 (10th Cir. 1975); Muller v. United States Steel Corp., 509 F.2d 923 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972). Subjective hiring and promotion decisions, particularly where made in the absence of specific standards and guidelines may not go unexplained if there is a significantly disproportionate non-selection of members of a group over an extended period. Title VII, however, does not require that preference be given any particular group. "Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." Griggs v. Duke Power Co., supra, 401 U.S. at 431, 91 S.Ct. at 853; E.E.O.C. v. Navajo Refining Co., 593 F.2d 988, 991 (10th Cir. 1979). "(T)he employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria." Texas Dept. of Community Affairs v. Burdine, -- U.S. --, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981).
 
 
 20
 Unquestionably, a great deal of subjective judgment is present in the system here employed. The Postmaster himself has a good deal of control over who is appointed because he alone appoints the selection panel, and some of the panel members are his own employees. Moreover, he makes the final selections from those who are certified. However, there was no evidence presented at trial to show that subjective considerations have been employed systematically over a period of years, and that this system has excluded women from supervisory positions. The evidence does indicate the Englewood Post Office employs only 14 women out of approximately 150 employees. The fact that there are only 14 women does create some suspicion. However, no one has even suggested that discrimination in hiring is present here. As a matter of fact there is a dearth of statistics showing any disparate impact which may have resulted from the subjective system that is employed.
 
 
 21
 The 14 women employees did not speak out one way or the other as to whether there has been discrimination based upon gender or sex. There was testimony that no female had been promoted to a supervisory position from within the Englewood Post Office subsequent to 1957. However, there was no evidence to show that there had been a disproportionate number of female employees as compared to supervisors in any year before 1975, and thus the evidence does not show a disproportionate failure to promote women over an extended period. Even after the August 1975 promotions of five additional male supervisors, the proportionate lack of female supervisors is not dramatic.
 
 
 22
 We do not suggest that the proportion of female supervisors to male supervisors should be exact and we acknowledge that failure of the plaintiff to show this does not of itself establish a prima facie case. But the complete absence of a woman supervisor, going back to 1957, creates at least some suspicion, even though it is slight. We do not, of course, know how many women had sought promotions to supervisory positions in the Englewood Post Office during prior times. There were, however, four who applied on this occasion, seeking one of the five jobs which were available. Another thing that the record does not reveal is how long the present selection process had been used. The August 1975 promotions were the first that were made by this postmaster and the evidence at the trial shows that at least as of August 1978 no additional promotions into initial level supervisory positions had occurred.
 
 
 23
 Another thing: A great deal of screening and processing goes into this selection team. It is not wholly subjective. The fact that the selection committee of five members were from different areas of Denver, even though they were all post office employees, is an objective factor, as is the fact that the standards from which the selection committee made a choice were written down and in that sense were objective. This is a grading system that looks to various work qualities.
 
 B.
 
 24
 Consideration of the evidence here in relationship to the disparate treatment approach.
 
 
 25
 The features of this theory are set forth in a recent decision of the Supreme Court. Texas Department of Community Affairs v. Burdine, supra.
 
 
 26
 First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 27
 Texas Dept. of Community Affairs v. Burdine, supra, -- U.S. at -- at 101 S.Ct. at 1093. See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); and Hernandez v. Alexander, 607 F.2d 920 (10th Cir. 1979).
 
 
 28
 In order to establish a prima facie case the plaintiff "must prove that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Texas Dept. of Community Affairs, supra -- U.S. at --, 101 S.Ct. at 1094. The circumstances which give rise to an inference of discrimination necessarily vary but the courts are guided by the rule that the circumstances must be such that it can be inferred that "more likely than not the actions were based on a discriminatory criteria illegal under the Act." Furnco, supra 438 U.S. at 576, 98 S.Ct. at 2949. If a prima facie case has been proven, a presumption arises that the plaintiff has been the victim of discrimination. The burden then shifts to the employer to rebut the inference, as noted above. The explanation must be "legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of proof, the presumption raised by the prima facie case is rebutted." The employer is not required to negate all possibility that discrimination was present. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all times with the plaintiff." Texas Dept., supra, -- U.S. at --, 101 S.Ct. at 1093.
 
 
 29
 If the defendant has articulated legitimate, non-discriminatory reasons, the plaintiff may then introduce evidence showing that those reasons are pretext and not true reasons. It should be noted that the presence of discriminatory motive is highly important and indeed critical in order for the plaintiff to succeed here. International Brotherhood of Teamsters v. United States, supra, 431 U.S. at 335, n. 15, 97 S.Ct. at 1854, n. 15.
 
 
 30
 The next inquiry is whether the trial court's findings and conclusions were clearly erroneous. The plaintiff argues that the trial court found that she had not made out a prima facie case. We do not agree. Our reading of the opinion shows that the judge evaluated all the evidence to determine whether plaintiff had proven sex discrimination by a preponderance of the evidence. The opinion indicates that the trial judge found that the defendants' articulated reasons for the plaintiff's non-selection were legitimate and lawful, negating any inference of discrimination, and that no showing of pretext had been made by plaintiff. For the reasons discussed below, we cannot say that this result was clearly erroneous.
 
 
 31
 Plaintiff unquestionably proved a prima facie case of sex discrimination. She is a female who applied for an available position. It is also undisputed that plaintiff was qualified for any one of the five positions that were available, although she felt most qualified for the Supervisor of Window Services position. She had a number of years of experience. She passed all preliminary screening requirements, and her name was certified to Postmaster Thome by the advisory panel as one of ten persons qualified to fill any of the five positions.
 
 
 32
 In our view, the circumstances under which plaintiff was rejected give rise to an inference of discrimination since plaintiff had served as a temporary Supervisor of Window Services for four months preceding the selection of a permanent supervisor. Her evidence indicated that in one area her qualifications were superior to those of Mr. Barker, the individual who was ultimately selected for Supervisor of Window Services. Finally, it is undisputed that subjective considerations played a large role in the selection process. Under these circumstances plaintiff is entitled to the benefit of an inference of discrimination, which inference requires the defendants to come forward and articulate legitimate reasons for her non-selection. The defendants did come forward with considerable proof as to both the procedure and the reasons behind the promotions. Plaintiff, however, argues that the trial court should have found that the reasons advanced by defendants were pretextual. She asserts that the court should have given more weight to her statistical evidence. We have already discussed this evidence in the context of the disparate impact analysis and will not repeat it.
 
 
 33
 Statistical evidence is, of course, relevant to a claim of disparate treatment and should be given proper effect by the courts. Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 (1971). Statistics showing a general pattern of discrimination are probative on the question of whether the reasons given for a particular action are pretextual. McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 805, 93 S.Ct. at 1825. The significance of statistical evidence in any given case depends on all the surrounding facts and circumstances. International Brotherhood of Teamsters v. United States, supra, 431 U.S. at 340, 97 S.Ct. at 1856. Statistical evidence should be closely related to the issues in the case. Taylor v. Safeway Stores, Inc., 524 F.2d 263 (10th Cir. 1975). Cf., Woods v. North American Rockwell Corp., supra; Olson v. Philco-Ford, supra; Pack v. Energy Research & Development Admin., 566 F.2d 1111 (9th Cir. 1977). Since the probative value of statistics is affected by such factors as the degree of statistical imbalance, the length of time an imbalance persists, and sample size, Title VII does not require perfect balance in a work force International Brotherhood of Teamsters v. United States, supra 431 U.S. at 339, n. 20, 97 S.Ct. at 1856 n. 20. Even statistics which show prolonged and marked imbalance may not be controlling in an individual discrimination case where a legitimate reason for the employer's action is present. McDonnell Douglas Corp. v. Green, supra 411 U.S. at 805, n. 19, 93 S.Ct. at 1826 n. 19.
 
 
 34
 The statistical evidence presented by plaintiff in this action does not furnish any support for an inference that defendants engaged generally in discrimination against females in promotions. Even following the 1975 promotions of five additional males, the underrepresentation of females is slight. To draw an inference of discrimination from the statistics alone would be to require perfect balance between the proportion of female employees and the proportion of female supervisors. The law does not require this. The real question is whether the 1975 promotions, and those promotions alone, involved discrimination on the basis of sex. The trial court focused on this question, giving no express consideration to plaintiff's statistical evidence. We cannot conclude that this omission was plain error; such a conclusion would be necessary in order to rule for plaintiff on this ground.
 
 
 35
 The plaintiff argues that the trial court gave insufficient weight to the fact that the selection process involved subjective judgments. True, the presence of subjective decision-making can create a strong inference of discrimination if there is a showing of significant disparity in the representation of a particular group. See e. g., Muller v. United States Steel Corp., supra; Rich v. Martin Marietta Corp., supra. Cf., Williams v. Colorado Springs, Colorado, School District $ 11, 641 F.2d 835 (10th Cir. 1981). As previously indicated the evidence presented in this case shows no such significant disparity. Subjective considerations are not unlawful per se. Title VII does not do away with traditional management rights. An "employer has discretion to choose among equally qualified candidates, provided that the decision is not based upon unlawful criteria." Texas Dept. of Community Affairs, supra -- U.S. at --, 101 S.Ct. at 1097.
 
 
 36
 We do not wish to be understood as saying that the presence of subjective criteria is irrelevant in a case such as the present one. Obviously subjective decision making provides an opportunity for unlawful discrimination. As in any disparate treatment case where the plaintiff makes a prima facie showing of discrimination, the defendant must articulate reasonably specific, legitimate reasons for a decision. The appropriate inference to be drawn from the presence of subjective criteria varies with the facts of the case. It is significant here that the positions involved were supervisory; such positions require abilities not fully measured by objective standards. While many of the abilities considered required subjective judgments, the relevant abilities were articulated in guidelines with reasonable specificity. Finally, the procedure employed ensured that the subjective judgment of no single individual would control, although the Postmaster did have considerable influence in making the selection.
 
 
 37
 Plaintiff succeeded in meeting the minimum objective requirements for candidacy. She had more than the minimum one year of experience with the post office, a great deal more in fact. Her score on the initial level supervisory examination at 99.38 was considerably above the cut-off score set by Postmaster Thome. The supervisory appraisal that was done by each candidate's immediate supervisor required evaluation in a number of areas involving subjective judgments. We must note, however, that the appraisal forms themselves provide considerable guidance to the evaluator; post office instructions provide further guidance and direct that specific examples be included where possible. In December 1974 Mr. Koon evaluated Mrs. Bauer. In addition to noting her competence and hard work as a window clerk, he stated that she was "short and abrupt" with customers and made "recurring" math errors. Mr. Koon's overall rating of Mrs. Bauer was a B. In June 1975, Mr. Thome reevaluated plaintiff to an A, enabling her to be considered for a promotion. Mr. Thome's comments again note that Mrs. Bauer made "many mistakes" in the math area.
 
 
 38
 Following her receipt of an A rating plaintiff was reviewed by an advisory panel, as we have previously noted. The Chairperson was a female. The advisory panel also evaluated the candidates in areas requiring subjective judgments. Again, however, the evaluation was guided by written standards. Testimony was conflicting as to whether the panel members were aware of the post office instructions. Mr. Kirton's testimony was not clear on this point. Mr. Koon did not recall any written guidelines. Mr. Dick, Manager of Employee Relations at the time, testified that he discussed the post office instructions on promotions and the affirmative action plan with the panel before review of the candidates began. Mrs. Eaton confirmed Mr. Dick's recollection. The forms used by the advisory panel contained written guidelines and specific areas in which each candidate was to be evaluated. The panel members filled out their evaluation forms independently of each other. By secret ballot Mrs. Bauer received two votes and placed in the top ten candidates. However, plaintiff received fewer votes in this balloting than any other candidate except Perri. By another secret ballot the candidates were ranked. Mr. Koon ranked plaintiff second but her next highest ranking was seventh. Mrs. Eaton ranked plaintiff tenth, as did the panel overall.
 
 
 39
 Under these circumstances we have to agree with the trial court that the action of the panel in ranking Mrs. Bauer tenth was not shown to involve discrimination or pretext. The factors which were considered by the panel, although largely subjective, were articulated. The factors appear to be relevant to the job, if somewhat general and vague. Some of the factors were supervisory ability, attitude and motivation, and general postal knowledge. The judgments of the members of the panel were arrived at individually. There was no evidence which suggested that the panel's actions were pretextual.
 
 
 40
 In the last analysis plaintiff's argument is that she is the best qualified candidate for the position of Supervisor of Window Services. She therefore maintains that Postmaster Thome's failure to select her for that position indicates that his articulated reasons were in fact a pretext for discrimination.
 
 
 41
 Under the Post Office regulations the installation head "may select any candidate" from the list certified by the advisory panel, provided that candidate meets the requirements established for the position. The description of Supervisor of Window Services is set forth at some length in Exhibit 11. The job responsibilities include a number of tasks, including contact with the public regarding complaints, submission of budget estimates, keeping operation costs within fund allocations, and responsibility for stock and supplies and general supervision of a few employees. Mrs. Bauer has focused her argument on the experience section of the job description, which states "extensive experience in window services activities. Well-developed human relations skills."
 
 
 42
 Mrs. Bauer has argued that she was better qualified than Mr. Barker because of her lengthy experience in window services. It is not disputed that she had approximately seven and one-half years of experience in this area, while Barker had approximately seven months. However, Thome testified that the job could be mastered in two months. Mrs. Bauer herself testified that six months would be enough to master the job. She also argues that she had more experience in supervising window services than Mr. Barker. Between the time the job of Supervisor of Window Services was created and the August 1975 promotions, Mrs. Bauer apparently served as acting supervisor of window services. However, before the position was created, window services were the responsibility of the Supervisors of Mails and of Finance. Mr. Barker had had experience supervising window services while filling in as Supervisor of Mails.[1] Mrs. Bauer claims in addition that her human relations skills were superior to Mr. Barker's. However, Mr. Koon's evaluation of Mrs. Bauer indicated that she was short and abrupt with customers.
 
 
 43
 Mr. Thome testified that he reviewed the candidates in light of his own knowledge of the individuals and the job requirements and consulted with Koon and Kirton. He said that he agreed with the panel that Mrs. Bauer was not one of the best qualified candidates, citing her math problems and customer relations. He concluded that Mr. Barker should be placed in the job.
 
 
 44
 In summary, the defendants articulated the following reasons for the selection of Mr. Barker, rather than plaintiff, for Supervisor of Window Services. While Mrs. Bauer had longer experience as a window services clerk, Mr. Barker's experience was deemed adequate. On the other hand, Barker had more supervisory experience. Mrs. Bauer had specific problems with customer relations and math; no such difficulties were noted by Mr. Barker's superiors. Ultimately, however, the decision turned on comparative evaluation of capabilities considered important to performance as a post office supervisor. The factors considered, both by the advisory panel and by Postmaster Thome, generally required subjective judgments and were not measurable by objective standards.
 
 
 45
 (T)he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that an employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination.
 
 
 46
 Texas Dept. of Community Affairs v. Burdine, supra -- U.S. at --, 101 S.Ct. at 1097. The trial court reviewed the evidence and found that defendants' reasons were not discriminatory or pretextual. It does not appear that Mrs. Bauer's qualifications were so plainly superior as to require a finding of pretext. In the last analysis, our affirmance has to be based on the fact that it cannot be said that the conclusion of the trial court was clearly erroneous. See Hernandez v. Alexander, supra; James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979); Ayon v. Sampson, 547 F.2d 446 (9th Cir. 1976).
 
 
 47
 The fact that we might have arrived at a different conclusion does not change the result. In order to reverse this judgment it would be necessary for this court to determine that the trial court's findings were clearly erroneous. That we cannot do based upon the evidence.
 
 
 48
 Two final points are made by Mrs. Bauer. She argues that the action which was taken in rejecting her in favor of her competitor, Mr. Barker, runs counter to the affirmative action program. That program does not, however, require that promotions be given to minorities and females who are not better qualified than other competitors. That plan indicates that female and minority representation at all levels is to be obtained by encouraging all qualified personnel to seek promotions. Guidance and encouragement is to be provided to employees seeking to improve their skills and abilities. The plan indicates that advisory panels are to include women and minorities. Nowhere, though, is there a provision that a female who is qualified for a promotion must be selected in preference to an equally qualified male. The Post Office instructions on initial level supervisor positions indicate that selections are to be "made without regard to race, color, religion, sex, age or national origin". The law does not demand that an employer give preferential treatment to minorities or women.
 
 
 49
 Plaintiff's final suggestion is that the trial court improperly placed the burden upon her of producing direct evidence of intentional discrimination. A plaintiff may rebut articulated reasons indirectly by showing that these reasons are not credible or directly by showing that discrimination was more likely the true reason. Texas Dept. of Community Affairs v. Burdine, supra -- U.S. at --, 101 S.Ct. at 1093. The trial court's opinion specifically notes that Postmaster Thome upgraded plaintiff's appraisal rating to an A, which enabled her to be considered for promotion, and that Thome had never displayed any personal animosity toward women. We do not read this brief analysis as requiring direct proof of discrimination, but only as a finding that the preponderance of the evidence negated any inference of discrimination or pretext.
 
 
 50
 We must repeat that the evidence in the case is not such as to establish that the trial court's ruling was clearly erroneous. Accordingly, we are of the opinion that the judgment in the district court should be, and it is hereby, affirmed.
 
 
 51
 It is so ordered.
 
 
 
 [1]
 Throughout the record, experience gained by filling in for supervisors is referred to as "204b time." Mr. Barker had considerably more 204b time than Mrs. Bauer in 1974 and 1975, much of such time involving supervision of window services. In addition, Mr. Barker had a great deal of supervisory experience in the military