Karleen MITCHELL and Nancy
Johnson, Plaintiffs,

v.

UTAH STATE TAX COMMISSION,
Defendant.

No. 2:94 CV 576 K.

United States District Court,
D. Utah,
Central Division.

Nov. 17, 1998.

Erik Strindberg, Ralph E. Chamness, Bradley M. Stassberg, Cohne Rappaport & Segal, Salt Lake City, UT, for Plaintiffs.

J. Mark Ward, Donald H. Hansen, Utah Attorney General's Office, Salt Lake City, UT, Jennifer L. Falk, Utah Attorney General's Office, Litigation Unit, Salt Lake City, UT, for Defendant.

## ORDER

KIMBALL, District Judge.

Before the Court is Defendant's Motion for Summary Judgment against Plaintiff Karleen Mitchell.

### BACKGROUND

Plaintiffs Karleen Mitchell and Nancy Johnson allege that they were discriminated against by their employer, the Utah State Tax Commission ("TC") on the basis of their race (Hispanic) and their religion (Catholic). The actions of the two plaintiffs were severed by Judge J. Thomas Greene in the summer of 1997. Johnson's action has been stayed since that time.

Mitchell has been a TC employee since 1980. Mitchell alleges that, beginning in 1983, she was denied the opportunity to interview for positions for which she was qualified and was denied promotions to other positions on the ground that she did not interview well. She alleges that many of the people who were hired or promoted to these positions were either personal friends and relatives of members of the TC's administration or attended the same church as members of the TC's administration. However, Mitchell has now dropped her charge of discrimination based on religion. Among other things, Mitchell alleges that her supervisor from 1988 until 1990, John Oakes, remarked frequently that Hispanics were lazy and stupid.

According to the TC, the following process was used to fill all the TC openings in question: In the first phase, the applicants to be interviewed were selected. All applicants were given a composite, numerical, "application score" based on their TC experience, total experience in the field, relevant college education, and any veterans preference. For recruitments limited to internal applicants, applicants were rated either "accept" or "reject." The top five or ten public applicants were placed on a "register" and interviewed. After 1991, any state or internal applicant having the same or higher score as a public applicant on the register was interviewed; prior to 1991, such an applicant may have been granted a courtesy interview even though the applicant's score was lower than the scores of applicants on the register.

In the second, or interview, phase, the selected applicants were interviewed. All of the applicants to be interviewed entered this phase on equal footing. The interviews were conducted by a panel composed of at least two management-level employees, trained regarding the TC's written policies, including its policy prohibiting employment discrimination. A set of identical questions was posed to each interviewee. Each panel member scored each interviewee's response to each question and also scored each interviewee on attitude, assertiveness, professionalism, and communication. Each interviewee's total score was then tallied.

In the final phase, the successful applicant was selected on the basis of this total score and by the quality of the reference checks obtained from the interviewee's present or former supervisor. It is unclear whether the references of all applicants were checked or whether the references of only the top one or more applicants were checked.

Mitchell filed a complaint with the Utah Anti–Discrimination Division ("UADD") and the Equal Employment Opportunity Commission ("EEOC") on October 15, 1991. She filed this lawsuit on May 3, 1994. The TC's internal document retention policy requires the retention of recruitment files for a period

of four years after the closing of the recruitment. In accordance with that policy, the TC was able to produce records only for the five positions for which Mitchell applied after 1990. During oral argument, Mitchell's counsel raised the argument that the TC's failure to retain recruitment records pertaining to Mitchell after Mitchell filed a complaint with the EEOC violated EEOC regulations requiring the preservation of personnel records by political jurisdictions for two years and, in the event discrimination is charged, until resolution of the charge.[1]

Mitchell did not have the highest interview score for any position for which records are available; although she had a higher numerical score than one successful applicant. None of the interviewers were Hispanic; apparently, all were Caucasian. The TC claims that Mitchell was denied these promotions because she scored lower in the interview stage than the successful applicants.

Mitchell also alleges that she was retaliated against for lodging her complaint with the UADD and the EEOC.

### DISCUSSION

#### A. Mitchell's Employment Discrimination Claim.

The *McDonnell Douglas* framework controls the analysis of claims for employment discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, to withstand summary judgment, a plaintiff must first establish a prima facie case of employment discrimination by demonstrating:

(1) that plaintiff is a member of a protected class;

(2) that plaintiff applied for and was qualified for an available position;

(3) that plaintiff was rejected despite being qualified; and

(4) that the position remained open as the employer continued to search for applications or the position was filled by a person not of the protected class.

411 U.S. at 802, 93 S.Ct. at 1824–1825.

The employer must then offer a facially nondiscriminatory reason for its employment decision—the employer "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (internal quotation marks, citation, and emphasis omitted).

"Once the presumption raised by the prima facie case is rebutted, the factual inquiry proceeds to a new level of specificity." *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 798 (10th Cir.1993) (*internal quotation marks and citation omitted*). The plaintiff must then show discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (*internal quotation marks and citation omitted*). At that point, the court must "make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff." *Id.* (*internal quotation marks and citation omitted*).

#### 1. Positions Filled After 1990.

Defendant concedes that Mitchell has met her burden of establishing a prima facie case with respect to positions filled after 1990, that is, the positions for which recruitment records are available, and Mitchell concedes that Defendant has met its burden to put forth a facially nondiscriminatory reason for its decisions regarding those positions. To fulfill her burden to show that Defendant's proffered reason is pretextual, Plaintiff has not directed the Court to any evidence showing that Defendant had a discriminatory motive in awarding the positions to other applicants. Rather, Plaintiff has advanced three reasons why the TC's stated explanation for Plaintiff's lack of success is unworthy of belief.

---

1. Although this Court does not condone the practice of waiting until oral argument to advance

new arguments, this Court invited both parties to submit short memoranda addressing the issue.

■ First, Plaintiff argues that the determinative score is based entirely on subjective considerations and cites a Tenth Circuit decision holding that "the rejection of an otherwise qualified individual on the basis of subjective considerations entitles the plaintiff to the benefit of an inference of discrimination." *Pitre v. Western Electric Co.*, 843 F.2d 1262, 1271–72 (10th Cir.1988) (*internal quotation marks and citation omitted*). The *Pitre* inference applies, however, only to decision processes marked by "the total lack of objective standards." *Id.* at 1271.

■ As Defendant notes, its process had both an objective and a subjective component and appears designed to limit subjective judgments. As in *Bauer v. Bailar*, 647 F.2d 1037 (10th Cir.1981), procedures were employed to ensure that the subjective judgments of a single individual could not control and to ensure that subjective judgments were made with reference to standards that "were written down and in that sense objective." *Id.* at 1043–45. Nonetheless, in the judgment of this Court, this attack is sufficiently persuasive that, if accepted by a jury, it could support a verdict in Plaintiff's favor.

■ As a second point, Plaintiff argues that use of the kind of subjective standards or factors considered by the TC, such as attitude and assertiveness, may offer a convenient pretext for discrimination and can create a strong inference of discrimination if there is a showing of significant disparity in the representation of a particular group, citing *Mohammed v. Callaway*, 698 F.2d 395, 401 (10th Cir.1983). Plaintiff has made no such showing and this is not a disparate impact case. Moreover, the fact that the positions at issue were upper level presents special considerations with respect to the use of subjective criteria. As the Tenth Circuit explained in *Bauer*:

> The appropriate inference to be drawn from the presence of subjective criteria varies with the facts of the case. It is significant here that the positions involved were supervisory; such positions require abilities not fully measured by objective standards. While many of the abilities considered required subjective judgments, the relevant abilities were articulated in guidelines with reasonable specificity.

647 F.2d at 1046. However, again notwithstanding its weaknesses, this second attack is also sufficiently persuasive that it could support a verdict in Plaintiff's favor if accepted by a jury.

■ As a third point, Plaintiff argues that the interview process was biased against her because it included reference checks from applicant's present and past supervisors, which, in Plaintiff's case, meant John Oakes, who Plaintiff has accused of making racially derogatory remarks. However, Oakes has submitted an affidavit in which he states that he never made comments regarding Mitchell to any interview panel member considering her as an applicant or otherwise attempted to influence the outcome of her applications. Because this portion of Oakes' affidavit is unrebutted, Plaintiff has failed to demonstrate the existence of a genuine issue of fact as to whether the final phase of the process was biased; the only available evidence compels this Court to conclude that it was not.

■ Plaintiff also argues that the TC's proffered explanation is unworthy of belief because John Oakes was a hiring official within the TC, creating a question of fact as to whether he may have influenced Plaintiff's chances, even if only indirectly. In support of this argument, Plaintiff directs the Court to a portion of the deposition of Norma Middleton, in which she testifies that Oakes was one of the "hiring officials" she worked with in Plaintiff's division. Plaintiff has not directed the Court to any evidence concerning what either person's responsibilities might have been in that regard, or otherwise explained specifically how Oakes' alleged bias may have infected the process in such a way as to render the outcomes achieved thereby unworthy of respect. Again, such evidence is insufficient to raise a genuine issue of fact concerning the point.

Accordingly, this Court finds that Plaintiff's first two criticisms of the Defendant's hiring process are sufficient to satisfy her summary judgment burden to put forward evidence upon the basis of which a reasonable jury could conclude that Defendant's proffered explanation for Plaintiff's failure to succeed are unworthy of credence.

## 2. Positions Filled Before 1990.

■ The parties dispute the effect of the TC's failure to comply with *29 C.F.R. § 1602.31*, which requires the TC to preserve its personnel records for two years and, in the event discrimination is charged, until resolution of the charge. Since Plaintiff filed her complaint with the EEOC on October 15, 1991, the TC should have had personnel records pertaining to Plaintiff from at least October 15, 1989, to the present. However, as previously mentioned, Defendant has records only from 1990 to the present.

Defendant argues that its failure is meaningless inasmuch as Plaintiff has failed to meet her burden to establish a prima facie case of discrimination with respect to any positions filled before 1990 by failing to offer any evidence that she applied for any positions between October 15, 1989, and the date in 1990 after which the relevant personnel records were retained by the TC. In the absence of any evidence that Plaintiff applied for any positions during that time, Defendant argues there is no way to know whether any records were actually discarded in violation of the regulation.

On the other hand, Plaintiff argues that Defendant's inability to produce records prior to 1990 is tantamount to a failure to articulate a non-discriminatory reason for its failure to promote Plaintiff, thereby constituting a failure to rebut her prima facie case.[2]

This Court is not aware of any reported judicial decision considering the effect of an employer's noncompliance with *§ 1602.31* in a circumstance where the plaintiff has failed to establish a prima facie case.[3] In the absence of direction from the Tenth Circuit, at least two factors lead this Court to hold that Defendant's apparent *§ 1602.31* violation does not protect Plaintiff from her failure to establish a prima facie case with respect to positions for which she might have applied prior to 1990. First, to do otherwise could result in strict liability for an employer who failed to comply with *§ 1602.31*. While such regulations are designed to protect and benefit employees, Plaintiff has not cited any authority suggesting that such a harsh result is warranted, especially since the result is at odds with well-established law placing the ultimate burden of persuasion on Title VII plaintiffs. Second, to do otherwise would relieve Title VII plaintiffs of the equally well-established, and relatively light, burden of establishing a prima facie case.

Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim of employment discrimination based on acts that occurred before the date in 1990 after which the relevant personnel records were retained by the TC.

## B. Mitchell's Retaliation Claim.

■ The same "burden-shifting" model applicable to the analysis of discrimination claims applies to the analysis of retaliation claims. To withstand summary judgment, a plaintiff must first establish a prima facie case by demonstrating:

(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination;

(2) adverse action by the employer; and

(3) a causal connection between the protected activity and the adverse action.

---

2. Plaintiff also argues that Defendant's document retention policy required the preservation of records pertaining to Plaintiff for the four-year period preceding October 15, 1991. However, no evidence of any such policy is before the Court. Together with the lack of any evidence that Plaintiff applied for any positions prior to 1990 and the lack of any evidence suggesting that Defendant engaged in the spoliation of evidence or otherwise violated discovery duties imposed by the *Federal Rules of Civil Procedure*, that deficiency requires this Court to find that Plaintiff has failed to establish a prima facie case with respect to any act of discrimination alleged to have occurred prior to October 15, 1989.

3. There are reported decisions holding that noncompliance supports a finding of pretext, including *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1419 (10th Cir.1987). In that case, the Tenth Circuit held that a plaintiff was "entitled to the benefit of a presumption that the destroyed documents would have bolstered her case" when her employer destroyed documents in violation of an analogous EEOC regulation applicable to nongovernmental employers. As here, there was no suggestion that the employer in *Hicks* acted in bad faith or selectively retained certain documents while discarding others. *Id.* at 1419 n. 5.

*Jeffries v. State of Kansas,* 147 F.3d 1220, 1231 (10th Cir.1998). If the plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If such a reason is proffered, plaintiff may prevail only by demonstrating that the employer's articulated reason is pretextual. *Id.*

Plaintiff's ability to establish the first element is not in dispute. With respect to the second, Plaintiff alleges that she suffered the following adverse employment actions: (i) she was harassed by co-workers concerning her claim with her supervisor's knowledge; (ii) she was asked why she was taking a vacation day on the same day as her co-plaintiff, Nancy Johnson; (iii) she was denied the opportunity to apply for a temporary supervisory position; and (iv) the TC failed to place an award in her file.

 In the Tenth Circuit, whether a particular action constitutes an "adverse employment action" is to be determined on a case-by-case basis. *Jeffries,* 147 F.3d at 1232. In *Jeffries,* the Tenth Circuit reversed the district court's determination, made as a matter of law in the context of a summary judgment motion, that the plaintiff did not suffer an adverse employment action when her supervisor angrily reprimanded her, refused to continue to supervise her student internship, and repeatedly informed her that the term of her internship would not be renewed. In doing so, the Tenth Circuit expressly rejected the "materiality" requirement adopted by other circuits, explaining that adverse employment actions are to be defined liberally in recognition of Title VII's remedial nature. *Id.*

 This Court is mindful of the cautionary message *Jeffries* sends to district courts considering dismissing retaliation claims. Nonetheless, at least one of the actions alleged by Plaintiff is so immaterial that it cannot withstand summary judgment, namely, Plaintiff's claim that she was asked by her supervisor why she was taking a vacation day on the same day as her co-plaintiff, Nancy Johnson. Compared with the actions that have been found to constitute adverse employment actions in the Tenth Circuit, that

act is too insignificant as a matter of law. *See Jeffries,* 147 F.3d at 1232.

To establish the existence of a casual connection, Plaintiff relies entirely on circumstantial evidence, specifically, the fact that the alleged actions occurred after she filed her EEOC claim. In justification, Plaintiff cites authority from other jurisdictions holding that the fact that discriminatory treatment followed protected activity may itself establish a casual connection. *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). However, the showing required in the Tenth Circuit appears to be greater. In this circuit, "[a] casual connection is established where the plaintiff presents evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Corneveaux v. Cuna Mut. Ins. Group,* 76 F.3d 1498, 1507 (10th Cir.1996) (*internal quotation marks and citation omitted*).

 Plaintiff's claim that her co-workers made derogatory comments about her in her supervisor's presence fails the *Corneveaux* test. Such comments are insufficient in the absence of evidence that she suffered an adverse employment action as a result. *See, e.g., Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (requiring plaintiff to demonstrate nexus between discriminatory statements and adverse action in ADEA case). Plaintiff's claims concerning denial of a temporary supervisory assignment and placement of the award in her file also fail for lack of a casual connection. It is clear from Plaintiff's deposition that the only basis for these claims is that the events occurred after she filed the charge; that basis is insufficient to raise an inference that her protected activity was the likely reason for the adverse actions in the circumstances here.

### CONCLUSION

Defendant's motion for summary judgment is granted with respect to any act of discrimination alleged to have occurred prior to 1990. Defendant's motion for summary judgment is granted with respect to Plaintiff's claim of

retaliation. Defendant's motion for summary judgment is otherwise denied.