Betty J. OLSON, Petitioner-Appellant,

v.

PHILCO–FORD, Contractor for Guthrie Job Corps Center for Women, Respondent-Appellee.

No. 75–1208.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 13, 1975.

Decided Feb. 27, 1976.

Sylvia Marks-Barnett, Oklahoma City, Okl. (Stephen Jones, Enid, Okl., with her on the brief), for petitioner-appellant.

L. E. Stringer, Oklahoma City, Okl., for respondent-appellee.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a sex discrimination case charging a violation of 42 U.S.C. § 2000e–2(a)(1). The judgment of the district court was for the employer. We affirm.

Petitioner-appellant, Betty Olson, was employed by respondent-appellee Philco-Ford, a contractor for Guthrie Job Corps Center for Women. Mrs. Olson was a "Senior Instructor with a Level 6 classification." A vacancy occurred in the position of "Coordinator of General Education". It carried a higher classification but the record is not clear whether it was Level 8 or Level 9. Mrs. Olson learned of the vacancy through word of mouth. The Company did not post notices of position vacancies. She and three men sought the position. The Company's Associate Director made the recommendation for appointment to fill the vacancy and the final decision was made by the Center Director. The Associate Director interviewed Mrs. Olson. In accordance with Company policy, no record was made of that interview. About August 1, 1969, a male, Karl Husmann, was chosen for the position. Mrs. Olson complained of sex discrimination to the Oklahoma Human Rights Commission and to the federal Equal Employment Opportunities Commission. After satisfying the statutory requirements, she brought this suit. The district court summarily dismissed and she appealed. We reversed on procedural grounds. See our No. 74–1041—*Olson v. Philco-Ford.* On remand the Court heard the evidence presented by Mrs. Olson and, after she had rested her case, sustained a motion to dismiss.

Mrs. Olson and Mr. Husmann started to work for the Company at the same time and in the same position. They were promoted to a higher position at the same time. The Company stated its stand with regard to the selection of Husmann thus:

"The selection was made on the basis of the person at the Guthrie Job Corps Center whom it was felt could best perform the job to be filled. All available information was considered. Some recommendations were received and considered. Among the factors influencing the selection of Mr. Husmann were his apparent leadership ability, apparent ability at public relations and his demonstrated relationship with other staff members."

The trial court found:

"Defendant's failure to promote her [Mrs. Olson] was not on the basis of discrimination because of sex."

Counsel for Mrs. Olson attack the findings of the trial court saying that they do not satisfy the requirements of Rules 41(b) and 52(a), F.R.Civ.P., and the decisions thereunder. Although the findings are not models of judicial compliance with the mentioned rules, we see no need to explore the nebulous differences between findings of fact or ultimate fact and conclusions of law. We have a short record consisting of the petitioner's testimony, the Company's answers to interrogatories, and various documents. There is no question of credibility. The clearly erroneous standard determines the validity of the findings. In applying that standard the test is whether the appellate court is left "with the definite and firm conviction that a mistake has been committed." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129. The court of appeals does not decide factual issues de novo. Ibid.

In *Woods v. North American Rockwell Corporation,* 10 Cir., 480 F.2d 644, a Title VII case, we pointed out the difference between (1) a dismissal at the end of plaintiff's evidence in a court trial and (2) the grant of directed verdict at the conclusion of a jury trial. In situation (1), which we have here, the question for the appellate court is whether the findings are clearly erroneous. Ibid. at 645–646.

Mrs. Olson argues that she made a prima facie case and that it was error to dismiss at the conclusion of her evidence. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, a Title VII rehiring case, the Court considered the question of a prima facie case, and said that one may be made by showing that applicant (1) belongs to a minority, (2) he applied and was qualified for a job for which employer was seeking applicants, (3) he was rejected despite his qualifications, and (4) after his rejection the employer continued to seek applicants. Ibid. at 802, 93 S.Ct. 1817. In so holding the Court recognized that facts in Title VII cases vary and that the proof necessary in one case is not necessarily applicable to another. Ibid. at n. 13, 93 S.Ct. 1817.

Mrs. Olson was a qualified female applicant and was rejected. After the employment of Husmann the Company did not seek other applicants. Mrs. Olson and Husmann started to work at the same time and received salary increases at the same times. They had the same collegiate degrees. Mrs. Olson says that she was more qualified because she had studied for, but not obtained, a Ph.D. degree, because she had more years of teaching experience than Husmann, and because she had engaged in community activities requiring administrative ability whereas Husmann had not. The company does not dispute these claims. Nothing in the record shows that Husmann was not qualified or that the reasons for his selection were without basis.

Discrimination, she argues, may be inferred from the lack of posting of the position, the failure to provide a formal interview, and the selection of Husmann by two men, one of whom would have been her supervisor if she had been selected. So far as posting and interviewing is concerned there is nothing to show that in carrying on these practices the company engaged in any discrimination because of sex. Indeed, Mrs. Olson knew of the opening and was afforded an interview. Standing alone, selection by two males, one of whom would be her supervisor, will not sustain a reasonable inference of discrimination.

Further argument is that the reasons assigned by the Company for Husmann's selection were subjective and a pretext. These reasons were ability in leadership and public relations and "demonstrated relationship with other staff members." Mrs. Olson's answers are that she was better qualified. This in turn is a subjective conclusion.

In support of her claim of pretext Mrs. Olson presents the Company's employment statistics. Such statistics "may be helpful to a determination of whether * * [employer's action] conformed to a general pattern of discrimination." *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825. We have said that in discrimination cases "statistical data should be closely related to the specific issues presented." *Taylor v. Safeway Stores, Incorporated*, 10 Cir., 524 F.2d 263, 272; see also *Rich v. Martin Marietta Corporation*, 10 Cir., 522 F.2d 333, 346.

Company's answers to interrogatories show that in July and August, 1969, the total work force included 115 women and that this was 64% of the total. As of December 21, 1970, 16 men and 19 women held positions at or above grade 6. The record contains no statistics bearing on promotions. In a pre-trial deposition Mrs. Olson stated that "in 1969" there were 11 positions in grade 8 or higher of which 9 were filled by men and 2 by women. Her statement bears only on a particular time and has nothing to do with promotions. The case at bar is not like *Jones v. Lee Way Motor Freight, Inc.*, 10 Cir., 431 F.2d 245, 247, cert. denied, 401 U.S. 954, 91 S.Ct. 972, 28 L.Ed.2d 237 where there were no Negroes and 542 white in the category at issue. Nor is it like *Spurlock v. United Airlines*, 10 Cir., where there were only 9 black flight officers out of a total of 5900. 475 F.2d 216 at 218.

Our decisions in *Jones, Spurlock,* and *Taylor* all were related to hiring or discharge. Our concern is with promotion. Except for the incident presented to us, the record is silent on the subject of promotions. *Rich v. Martin Marietta* did involve

promotions. The record contained evidence of the percentage of racial-minority employees over an 8 year period. See 522 F.2d at 346, n.12. Petitioners sought, and the trial court denied, "plant-wide discovery." Ibid. at 339. The opinion noted the plaintiffs' claim that the promotion system "continually operated" to their disadvantage. Ibid. at 349. The case was remanded, among other things, for reconsideration of plaintiff's request for discovery. Ibid. at 349.

Mrs. Olson was given full opportunity to prove her case. No request for discovery was denied. There is no showing of a pattern, or continued operation, in the area of promotions which discriminated on the basis of sex. As the case is presented to us, the controlling issue is whether the selection of a qualified man over a qualified woman, standing alone, makes out a prima facie case of sex discrimination.

*Rich v. Martin Marietta* was a Title VII case pertaining to discrimination because of race and sex. There were seven named plaintiffs who sued both for themselves and the class which they represent. During the years 1966–1972 the number of employees ranged between 5,300 and 7,300. 522 F.2d 333, 336. The court estimated the class at 500–1,000. Ibid. at 342. Reference is made to many promotions and demotions but the exact number is not ascertainable from the opinion.

The court said, Ibid. at 348:

"Once a plaintiff has shown that he is qualified, he need only show a discriminatory impact and that he was among the class of employment who could have been considered for promotion."

In the case at bar Mrs. Olson was qualified. The phrase in the quotation "could have been considered for promotion" does not apply here because Mrs. Olson was considered. The question then is whether the promotion of a qualified man rather than a qualified woman suffices to establish a "discriminatory impact." If it does, then under the quoted excerpt from the *Rich* opinion, a prima facie case is made.

 We do not believe that *Rich* intended the law to be that in every instance when a qualified man and a qualified woman compete for a single opening, the selection of one over the other makes out a prima facie case. If such was the intent of *Rich*, we disagree with it. The facts in *Rich* are not comparable to those in the instant case. There, a substantial showing was made of the differences between the promotions of minority employees and non-minority employees. See 522 F.2d at 355, Chart 1–B. Here we have no such proof. To make a prima facie case in a situation such as that before us something more is needed than proof that a qualified male was chosen over a qualified female. If nothing more is needed, we have indeed opened Pandora's box.

Affirmed.