**Virginia M. ST. PETER, Appellant,**

v.

**SECRETARY OF the ARMY.**

**No. 79–2066.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1980.

Decided July 1, 1981.

---

Ronda L. Billig, Washington, D. C., for appellant.

Benjamin B. Sendor, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, and John R. Fisher, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

James M. Nabrit, III, New York City and Charles Stephen Ralston, New York City, were on the brief for amicus curiae NAACP Legal Defense and Education Fund, Inc., urging reversal.

Before TAMM and MIKVA, Circuit Judges, and PHILIP NICHOLS, Jr.,* Judge, United States Court of Claims.

Opinion filed by Circuit Judge TAMM.

Separate opinion concurring in the result filed by Circuit Judge MIKVA.

Dissenting opinion filed by Judge NICHOLS.

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1976).

TAMM, Circuit Judge:

In this case plaintiff Virginia M. St. Peter alleges the violation of Title VII of the Civil Rights Act of 1964 by Army officials in their promotion of a male, rather than the plaintiff, to a civilian GS–12 position in the United States Military Personnel Center (MILPERCEN) in Alexandria, Virginia. The case was tried before a United States Magistrate who recommended judgment for the defendants; this recommendation was adopted by the district court. Plaintiff attacks this decision on several grounds. Because we find no prejudicial error in the proceedings, we affirm the judgment for the defendants.

## I. BACKGROUND

### A.  *The Selection Process*

In August of 1976, the position of Chief of the United States Military Academy Section (Chief, or Chief of USMAS), Officer Accessions Branch, of the Officer Personnel Management Directorate (OPMD), was vacant. The Chief of USMAS is responsible for directing the nomination process for the United States Military Academy at West Point. The Chief makes annual requests for submission of nominations by nominating authorities and determines the eligibility of applicants for certain nominations. The Chief of USMAS also deals with nominating officials, including members of Congress, their staffs, and other high-level government and military officials.

A formal selection procedure was used to fill this position. Initially, a rating and ranking panel selected five candidates it considered "best qualified," including both the plaintiff and Thomas K. Staples, the eventual selection; these candidates were then interviewed by a two-member committee. The final selection decision was made by Lt. Col. Vespia, a member of the interviewing committee and assistant to Col. Hornish, the selection supervisor. Vespia tentatively selected Thomas Staples as Chief of USMAS; Staples was never informed, however, of that decision. Instead, because of several procedural irregularities, and perhaps because St. Peter filed a charge of discrimination, the entire process was voided.[1]

A voluntary equal employment opportunity officer, Michael Berger, investigated St. Peter's initial charge. Vespia told Berger that he had been looking for someone who would fit his image of a West Point cadet, and Berger concluded that either Vespia or OMPD preferred a man for the job. At the close of his investigation, Berger recommended to Carol Burnette, the MILPERCEN civilian personnel officer involved in this selection, that the procedure be changed and that St. Peter be reconsidered.

The second procedure for filling the position also began with a rating and ranking panel. This panel again selected the "best qualified" candidates, including St. Peter and Staples, although this time there were nine such candidates. The interviewing committee for this round consisted of three men, none of whom had been on the previous interviewing committee, and included Col. Hornish, the selection supervisor. Because the original selection procedure had resulted in a charge of discrimination, Carol Burnette, the civilian personnel officer, witnessed the interviews as an impartial observer. The final selection was made on the basis of the performance of the candidates during these short interviews.[2] Col.

---

1.  Joint Appendix (J.A.) at 26. Three other procedural irregularities may have contributed to the decision to void the initial selection. First, in choosing candidates to be interviewed, the rating and ranking panel failed to consider an individual who should have been considered. Second, the members of the rating and ranking panel did not "rate" and "rank" in a uniform manner. Third, Vespia was not authorized to make the selection in Hornish's absence.

2.  The panel asked each candidate a set of only six predetermined questions, followed by a catch-all question allowing the candidate to give the panel additional information if he so desired. The six questions were:
    (1) Have you read the job description for this position?
    (2) Based upon your reading of the job description, what do you see as the most important functions to be carried out in this position?

Hornish and the other interviewers were unanimous in their selection of Staples as Chief of USMAS.

## B. *The Proceedings Below*

On September 10, 1976, plaintiff filed a formal charge of discrimination with the United States Department of the Army. She alleged that the selection of Staples for Chief of USMAS had resulted from intentional discrimination on the basis of sex. On December 23, 1977, the Department made a final determination that there had been no discrimination. St. Peter filed a complaint in the United States District Court for the District of Columbia on February 1, 1978. By agreement of the parties, the case was tried to a magistrate; the trial was held on May 7, 8, and 9, 1979.

During the trial, the magistrate heard the testimony of the key actors in the selection procedure. Witnesses included an expert on the personnel records used by the rating and ranking panel, the equal employment opportunity officer who investigated St. Peter's first charge of discrimination, the three members of the second interviewing committee, the civilian Army Personnel Staffing Specialist who observed those interviews, St. Peter, Staples, and two of the other candidates for the job. The magis-

trate learned that St. Peter had served over twenty years in the Army in a variety of responsible positions and, after retiring from the Army in 1967, had been employed in several responsible civilian positions.

After reviewing all of the evidence, the magistrate entered findings of fact and conclusions of law. She found that the plaintiff and several of the other candidates were "far better qualified for the position" than was Staples. Joint Appendix (J.A.) at 27. *But see* note 4 *infra.* To support this conclusion, she pointed to St. Peter's longer career and superior formal education as well as her experience in dealing with high-ranking officials. In contrast, she noted that Staples had started at MILPERCEN as a clerk-typist in 1964 and had only a high school education enhanced by Army courses.[3] The magistrate also found that the selection process was inefficient and arbitrary, and that men as well as women were disadvantaged by it.

In her conclusions of law, the magistrate held that the plaintiff had established a prima facie case. On the ultimate question of discrimination, however, the magistrate found that the selection procedure was arbitrary, but not impermissibly discriminatory. The magistrate therefore ruled in favor of

(3) Why are you seeking this position?
(4) Why do you feel you are qualified for the position?
(5) Do you feel you have the ability to deal with high-level officials? Please explain.
(6) Are you available to travel? The travel consists of one-week trips to West Point four times a year and three-day trips to the prep schools at Fort Monmouth two times a year. Brief for Appellee at 10.

**3.** St. Peter had developed extension courses for military and civilian personnel, had commanded a WAC company, had dealt with members of Congress concerning the status of individual reservists, and had recorded and monitored selections for the active Army of Army officers, ROTC cadets, and civilians in the Army reserve. As Chief of the Military Personnel Management Branch in the Canal Zone, St. Peter had been responsible for processing selections of personnel for the Canal Zone and preparing briefings for her commander to give to civilian officials, including members of Congress. As a civilian, the plaintiff had worked for a NASA contractor for more than three years in several responsible positions and had later worked as

an equal employment opportunity officer for the Military District of Washington. In March of 1975, she had accepted a job in the Occupational Development Division of MILPERCEN, working on occupational survey questionnaires. J.A. at 36.

Between 1964 and 1971, Staples had been promoted to the position of Military Personnel Staffing Technician. In this capacity, Staples had identified and selected enlisted personnel for training and assignments. In 1971 he had been promoted to Military Personnel Management Specialist, working on programs for proficiency pay and reenlistment bonuses. His tasks in performing this job had included briefing high-ranking officers and high-level civilian officials in the Department of Defense, evaluating enlisted personnel for training and assignments, preparing correspondence, and drafting regulations. During nearly eleven years in the field of military personnel management, Staples had taken several officers' courses and a course in supervisory personnel management at the Adjutant General's School. J.A. at 41.

the defendant and dismissed the plaintiff's complaint on July 9, 1979. On August 16, 1979, the district court affirmed that decision by order and entered a judgment in favor of the defendant.

## II. DISCUSSION

St. Peter maintains that the magistrate's decision is premised on three errors. First, the magistrate failed to apply the appropriate standard for a prima facie case in a promotion situation. Second, she did not place the proper burden of proof on the defendant after determining that a prima facie case had been established. Third, and closely related to the second point, the defendant should have been required to demonstrate that Staples was *more qualified* than St. Peter in order to rebut the prima facie case.

### A. *The Prima Facie Case*

■ The magistrate did not articulate the precise factors she considered crucial to establish a prima facie case of a discriminatory failure to promote. She did refer to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), however, and, citing *Olson v. Philco-Ford*, 531 F.2d 474 (10th Cir. 1976), concluded that a "[p]laintiff must prove more than the mere fact of the promotion of a qualified male over a qualified female." J.A. at 30.

As the magistrate realized, any analysis of the appropriate components of a prima facie case must begin with *McDonnell Douglas*, the leading Supreme Court case in this area. There the Court described the evidence that the plaintiff must present to establish a prima facie case in a hiring situation:

(i) that he belongs to a racial minority;

(ii) that he applied and was qualified for

a job for which the employer was seeking applicants; (iii) that, despite his qualification, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

411 U.S. at 802, 93 S.Ct. at 1824. The facts before us are slightly different from those in *McDonnell Douglas*; this case involves the promotion of one person from a pool of qualified applicants rather than the refusal to hire a member of a protected group and then a continued search for other applicants with similar qualifications. Some courts have held that in such a promotion situation more than selection of a male over a qualified female must be shown. *See, e. g., Olson v. Philco-Ford*, 531 F.2d 474 (10th Cir. 1976).

I need not address the validity of this view here, however, because the magistrate did find that the plaintiff had established a prima facie case. I see no harm to the plaintiff in the route used by the magistrate to reach that conclusion; she found that the plaintiff had proved not only that she was qualified, but that she was *more* qualified than the successful candidate.[4] The plaintiff was not prejudiced, therefore, as a result of the analysis employed by the magistrate.

### B. *The Defendant's Burden*

■ Plaintiff's second objection concerns the burden of proof placed upon the defendant to rebut the prima facie case. St. Peter maintains that once a prima facie case is established, the plaintiff is entitled to recover "unless the defendant can prove that one of the other candidates for the position was more qualified than plaintiff and would have been selected for the position, even

**4.** It is not entirely clear why the magistrate believed St. Peter eminently more qualified for this position than Staples. St. Peter's superior formal education was irrelevant because, as a matter of law, educational background other than job-related courses may not be used as a selection criterion. *See* 5 U.S.C. § 3308 (1976). Staples had taken more job-related courses than had St. Peter. In addition, Staples had

somewhat higher ratings from his MILPERCEN supervisors than did St. Peter, *compare* J.A. at 45 *with* J.A. at 39, and apparently performed much better in his selection interview. Although St. Peter may have had more experience dealing with high-ranking officials over her longer career, Staples was not totally lacking in such experience. *See* note 3 *supra*.

absent any discrimination." Brief for Appellant at 14. The magistrate found that St. Peter was more qualified than Staples. She concluded, however, that there had been no unlawful discrimination, that the selection process had been arbitrary but not discriminatory.

The Supreme Court has resolved this precise issue in a manner consistent with the magistrate's decision. In *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a unanimous Court held that once a Title VII plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a believable nondiscriminatory reason for the employment action.

> The burden that shifts to the defendant ... is to rebut the presumption of discrimination *by producing evidence* that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. *The defendant need not persuade the court* that it was actually motivated by the proffered reasons.... [T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.

*Id.* at 1094, 1096 (emphasis added). In the case at hand, therefore, the magistrate quite properly placed no burden of persuasion upon the defendant.

Defendant's articulation of its nondiscriminatory rationale for the employment action at issue here is clearly revealed in the record. Thus, defendant chose not to review the applicants' backgrounds prior to the interviews because of a belief in the general equality of qualifications. J.A. at 87. Moreover, because the position to be filled was considered largely a sales position, J.A. at 88–89, the short interviews were seen as an effective vehicle for the evaluation of "enthusiasm" and salesmanship. The magistrate's opinion reflects an understanding of this rationale advanced by the defendant.[5] Where, therefore, the format of the trial has complied with the criteria established in *McDonnell Douglas* and later cases, the magistrate's failure to state specifically the defendant's articulated rationale is not critical to an understanding of the factual basis of her ultimate conclusion and does not require a remand. *E. g., Lujan v. New Mexico Health and Social Services Department*, 624 F.2d 968, 970 (10th Cir. 1980). *Cf. Klapac v. McCormick*, 640 F.2d 1361, 1363–65 (D.C.Cir.1981) (per curiam).

C. *The Ultimate Burden of Persuasion*

█ Plaintiff's final and related objection is simply that the defendant never gave a *good* reason for selecting Staples over her. Again, the Supreme Court's decision in *Burdine* makes clear that the defendant need not produce evidence that the person selected was better qualified than the plaintiff. Instead, the ultimate burden of persuasion remains on the plaintiff to establish unlawful discrimination. In *Lieberman v. Gant*, 630 F.2d 60 (2d Cir. 1980), the Second Circuit correctly forecast the result and rationale of *Burdine*. Judge Friendly's statement for the court on this issue demonstrates the error of plaintiff's contention.

> It is enough for the defendants in the second phase of the case to bring forth evidence that they acted on a neutral basis. They do not have the burden of establishing that their basis was sound; rather the burden then falls on the plaintiff to demonstrate that it is pretextual. One way of doing this, of course, would be to show that the asserted neutral basis was so ridden with error [or arbitrary] that defendant could not honestly have relied upon it.

*Id.* at 65 (footnote omitted). I find no reason to overturn the magistrate's conclusion that plaintiff failed to carry her ultimate burden of persuasion.

---

5. I do not endorse the selection procedure employed by the Army in this case. As the magistrate aptly observed, however, we are "not in the personnel business." J.A. at 29. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability ...." *Burdine*, 101 S.Ct. at 1097.

### III. CONCLUSION

After examining the decision of the magistrate in conjunction with the evidence of record, we find no reason to disturb the judgment for the defendants. Although the selection process employed by the Army certainly lacked sophistication, I agree with the magistrate that the promotion of a male over the plaintiff as a result of this process did not violate Title VII. Furthermore, although the magistrate's opinion could have been more finely tuned, I do not uncover any error inuring to the detriment of the plaintiff. We therefore affirm the judgment for the defendants.

*It is so ordered.*

MIKVA, Circuit Judge, concurring in the result:

I agree that there is no basis for reversing the judgment for the defendants. I do not agree that *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), is dispositive of this case. *Burdine* properly put to rest the mischievous notion that once a prima facie case was established by a Title VII complainant, the employer had to prove that the person hired or promoted was *more* qualified than the complainant. Even under *Burdine,* however, there is a burden that the employer must satisfy to overcome a prima facie case. Although an employer need not convince the court that it chose the better applicant, it must present an explanation that is not only "clear and reasonably specific," but also sufficient to allow "the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine,* 101 S.Ct. at 1096. In the case at bar, the magistrate found that burden satisfied.

The extra difficulty presented by this case is the magistrate's gratuitous finding that the plaintiff was *more* qualified than the person hired. Employers usually act in their own best interests, and it is somewhat incongruous to find that the employer chose a less-qualified man, rather than a more-qualified woman, but did not do so for discriminatory reasons. Although it may be difficult to convince a trier of fact that an employer selected a less-qualified person for a non-discriminatory reason, such behavior is not actionable. In any case, as Judge Tamm's opinion makes clear, the basis for finding St. Peter more qualified is tenuous at best, and the magistrate was ultimately convinced by the evidence that no discriminatory intent was present. In the posture of this appeal and applicable law, therefore, we need not address either the pertinence or the adequacy of the finding of superior qualifications.

NICHOLS, Judge, dissenting:

Though the service records of St. Peter, Staples, and the other candidates were available, the interview panel did not even look at them because it assumed, erroneously, that such records had already been determined to be neutral in the weight they added to or subtracted from one or the other candidacy. This is a frivolous method of making a selection for promotion, a type of decision making supposedly long since banished from the executive branch. I fail to see the mere explanation that defendant followed such method as satisfying the *Burdine* test. The evidence does not allow the trier of fact to conclude that the decision was not motivated by discriminatory animus. Even if not required to persuade, defendant must articulate a reason for its choice that would be acceptable if believed. A frivolous selection method furnishes evidence only in a negative sense, that is, that the real decision was made at a time, by persons, and by methods, that defendant does not see fit to divulge. The *prima facie* case is, therefore, unrebutted. The issues to my mind would be no different if defendant explained it selected Staples because he was a Leo or a Taurus. The latter explanation might, indeed, be sufficient for some private employers, but not for the U.S. Government with all its solemn standards and procedures. The magistrate in effect found the ostensible selection method to be frivolous, but failed to draw the unavoidable conclusion from her own finding.