**Beverly J. KACHEL, Plaintiff,**

v.

**CITY OF PUEBLO, Defendant.**

**Civ. A. No. 88–S–743.**

United States District Court, D. Colorado.

Aug. 2, 1990.

James Carleo, Colorado Springs, Colo., for plaintiff.

Theodore Halaby & Jonathan Cross, Denver, Colo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

SPARR, District Judge.

THIS MATTER came on for trial to the Court on July 30, 1990. Jurisdiction is proper pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* Plaintiff has brought two claims in the lawsuit, a violation of Title VII consisting of sexual discrimination and a pendent state claim alleging breach of contract.

### FINDINGS OF FACT

The Plaintiff, Beverly J. Kachel, is an employee of the Defendant, City of Pueblo. She has been employed in the Department of Housing and Community Development for more than 15 years. She possesses a Bachelor of Science Degree from the University of Colorado School of Business. Throughout the course of her employment, she had always been rated as satisfactory to good and has advanced in the Department of Housing and Community Development to a level just below that of Department Head.

Ms. Kachel had acted as a Housing Inspector in the Department of Housing and Community Development and as such had handled community development grants and had inspected various types of buildings in connection with the processing of rehabilitation loans. Her position other than when acting as Director of the Department did not involve the supervision of other employees. Ms. Kachel had no substantial experience in finance, accounting, or general administration.

For a number of years while employed at the Department, Ms. Kachel would assume the duties of Acting Director whenever the Director was on vacation, unavailable, or whenever it was requested that Ms. Kachel undertake these duties. During the time that she was assuming the duties of Director, there was never any complaint about her performance.

In 1987, Ms. Gladys Comi, the head of the Department of Housing and Community Development, notified the City Manager, Lewis Quigley, that she would be retiring from the position. Ms. Kachel became aware of this fact and, together with four other individuals, applied for the position. The other applicants were Mr. Clinton Towee, a male, Ms. Mary Macklem, a female, Mr. Venceslao Gonzales, a male, and Mr. Anthony Berumen, a male. At the time of their applications, they were all employees of the City of Pueblo.

At the time in question, the Department of Housing and Community Services was administering large federal grants for housing projects. At the time Ms. Comi resigned, the financial aspects of the Department were being handled separately by the Finance Department, where Mr. Berumen was employed in the position of Chief Accountant. Mr. Berumen had served for approximately 15 years in the City's financial department, rising to the number two position in that department as Chief Accountant.

At the time of the vacancy, the Inspector General's staff of the federal government was conducting an investigation into the City of Pueblo's use of federal grant money. The investigation involved a failure to comply with certain rules of the federal government concerning disbursements. While the City Council of the City of Pueblo had made the decision for the expenditures under investigation, Mr. Quigley was of the opinion that it was the failure of Ms. Comi as head of the Department of Housing and Community Development to alert

the City Council as to potential problems that caused the council to act without being properly informed. He testified that he felt this had been the major reason for the federal inquiry. Mr. Quigley had attributed Ms. Comi's failure to make an appropriate report to City Council to her lack of experience in financial and accounting matters. Thus, Mr. Quigley's primary focus in filling the vacancy occasioned by Ms. Comi's retirement was to have a director with substantial financial and accounting experience and to transfer the financial responsibilities administered by the Finance Department to the new director. By this action, the City Manager had hoped to avoid problems like the pending investigation by the Federal Inspector General. Mr. Quigley also testified to a second consideration, that being to appoint a director with sufficient supervisory experience to ensure the continued proper functioning of the department. Mr. Quigley was not of the opinion that actual experience in the specific department in question was in and of itself a requirement so long as the person appointed to head the department had sufficient administrative and technical background to appropriately handle the supervision of the department. Mr. Quigley was of the opinion that Mr. Berumen had the necessary and requisite qualifications for appointment of the position as head of the department.

Under the City Charter, the department directors were appointed by and subject to the authority of the City Manager. The Charter mandates that all persons appointed as directors of bureaus and departments be selected on the basis of their training, experience, qualification, and fitness for the particular job to be performed. Although the Charter calls for first consideration to be given to persons already employed in the respective departments, this is clearly subject to the qualifications of the person to be selected and qualifications are to be judged in the discretion of the appointing authority, the City Manager. Judging of qualifications was left solely to the subjective discretion of the City Manager.

In September of 1987, City Manager Quigley appointed Mr. Berumen as Director of the Department of Housing and Community Services. At the time he appointed Mr. Berumen, Mr. Quigley did not have a job description for the position and did not review personnel files of Mr. Berumen or the other applicants. He did not rank the candidates nor did he give particular consideration to their performance on their present jobs. The position was awarded to Mr. Berumen based on his extensive financial and supervisory experience which, as indicated above, were perceived by Mr. Quigley to be the most important qualifications in light of past problems in the department with the administration of federal grants. Mr. Quigley did not perceive Ms. Kachel as sufficiently qualified to assume, on a full-time basis, the responsibilities of the managing the entire department. As indicated above, the decision was basically subjective and Mr. Berumen was determined by Mr. Quigley to be the most experienced of the applicants for the specific position in question especially in light of the pending federal investigation.

The evidence demonstrated that in 1980 the total work force of the City of Pueblo was 712 employees consisting of 608 males, 104 females. In 1981 the work force increased to 721 employees, 613 male, 108 female. As indicated, the incidents in question in this case occurred in 1987. In that year, the total work force was 651 employees, 536 male, 115 female. In 1988 there were 652 total employees, 540 male and 112 female. The percentage of male to female employees varied during the years in question from 86% to 14% in 1981 to approximately 83% to 17% in 1988. Plaintiff also presented statistics indicating that in the category of administrators, the percentage varied from 97% male to 3% female in 1980, to 87% male to 13% female in 1988. In the professional category, the figures varied from 93% male to 7% female in 1980, to 95% male to 5% female in 1988. The clerical positions summarized were approximately 2% male to 98% female in 1980, 6% male to 94% female in 1988. It was noted in colloquy, however, that the above statis-

tics are somewhat suspect in this particular case since the statistics include the total work force of the City of Pueblo, the vast majority of which work force is composed of classified employees. The statistics are especially suspect when the Court takes into consideration the evidence that in the number of directorship positions filled during the time period, the balance of male to female appointments was approximately equal.

## CONCLUSIONS OF LAW AND ORDER

Plaintiff asserts that she was not promoted to Director of the City of Pueblo's Department of Housing and Community Services solely because of her gender. She contends that the evidence clearly indicates an unlawful gender bias in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

Plaintiff further claims that the City of Pueblo breached a contract with her because of the City Charter provision that in appointing directors in departments "first consideration" was to be given to persons already employed within the department. Plaintiff claims that promoting a person from outside the department to the director position breached that contract.

As to the civil rights claims, Plaintiff makes claim under two theories: disparate treatment and disparate impact.

### A. *Disparate Treatment*

■ The law to be applied in Title VII discriminatory treatment cases is well established. *See United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The allocation of the evidentiary burdens is clear. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of employment discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas v. Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093; *McDonnell Douglas v. Green*, 411 U.S. at 804, 93 S.Ct. at 1825.

■ The establishment of a prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *McDaniel v. Temple Independent School Dist.*, 770 F.2d 1340, 1345, 1346 (5th Cir.1985). In order to prove a prima facie case of employment discrimination, a plaintiff must show that: (1) she was a member of a protected group; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open to or was awarded to an applicant with plaintiff's qualifications. *McDonnell Douglas v. Green*, 411 U.S. at 802, 93 S.Ct. at 1824.

■ If the plaintiff succeeds in proving a prima facie case, the second evidentiary phase requires the employer to articulate some legitimate nondiscriminatory reason for its adverse employment decision concerning the plaintiff. The employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus. This is the employer's burden of production only, not a burden of persuading the Court that it was actually motivated by the proffered reason. *Texas v. Burdine*, 450 U.S. at 254, 255, 101 S.Ct. at 1094, 1094–95. If the employer fails to satisfy this burden, the presumption of discrimination remains unrebutted and the plaintiff prevails.

■ However, if the employer satisfies its burden of production, the presumption of discrimination disappears. The case then proceeds to the third evidentiary

phase, where the plaintiff is required to prove by a preponderance of the evidence that the legitimate nondiscriminatory reason proffered by the employer was not the true reason for the adverse employment decision. The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989); *Texas v. Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. The plaintiff's burden may be met either directly by demonstrating that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *McDonnell Douglas v. Green,* 411 U.S. at 804, 805, 93 S.Ct. at 1825, 1825–26. Types of evidence the plaintiff can use include discriminatory statements or admissions, comparative evidence, and statistics.

■ Plaintiff's Complaint alleged that she was a qualified employee and had performed her job in a satisfactory manner, that the City of Pueblo engaged in a pattern and practice of sex discrimination based on statistical evidence of a disproportionate number of male employees in the directorships of its numerous departments, that the job in question was ultimately filled by a male and that she was not considered for the job because of her sex, thus constituting an unlawful act under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

Plaintiff's evidence merely establishes that she was a qualified employee, that she belonged to a protected class, that she applied for the job in question and despite her qualifications she was rejected. The evidence also establishes that the promotion of a male employee to the position was based upon a problem which the City was having with apparent mismanagement of the Department by the previous Director. The Defendant perceived this problem to be due to the lack of financial and supervisory experience of the previous director. This was a particularly important consideration in the Defendant's actions in promoting Mr. Berumen rather than Ms. Kachel. The City of Pueblo has therefore satisfied its burden to articulate some legitimate nondiscriminatory reason for rejecting Ms. Kachel. Ms. Kachel then has the burden to prove that this reasoning by the employer was merely a pretext. The cases are clear that under the Civil Rights Act, employers are given wide discretion in setting the standards and requirements and in deciding whether applicants meet these standards. *Verniero v. Air Force Academy School Dist.,* 705 F.2d 388 (10th Cir.1983); *Bauer v. Bailar,* 647 F.2d 1037 (10th Cir.1981); *Hickman v. Flood & Patterson Ins. Inc.,* 766 F.2d 422 (10th Cir.1985). As long as the employer sets objective and reasonable employment standards and the promotion is based upon those standards rather than some discriminatory motive, the employer cannot be criticized for sex discrimination. *Burrus v. United Telephone of Kansas Inc.,* 683 F.2d 339 (10th Cir.1982).

Even assuming, for purposes of discussion, that Ms. Kachel was equally qualified with the person who was promoted, the question still remains whether promotion of the qualified man rather than the qualified woman is based upon gender considerations. More is needed than proof that a qualified male was chosen over a qualified female. *Olson v. Philco–Ford,* 531 F.2d 474 (10th Cir.1976). As in the *Olson* case, nothing in this record shows that Berumen was not qualified or that the reasons for his selection were without basis. The Plaintiff here, as in *Olson,* argues that discrimination may be inferred from the lack of posting of the position, the failure to provide a formal interview, and the selection of Berumen, a male, over Ms. Kachel, a female. This is simply insufficient in and of itself to satisfy the burden of proof in this case. Standing alone, selection of a male over a female where both are qualified will simply not sustain an inference of discrimination.

In support of the claim of pretext, Plaintiff presents the employment statistics. Such statistics may be helpful in determining whether the action in question conformed to a general pattern of discrimination. *McDonnell Douglas,* 411 U.S. at 805,

93 S.Ct. at 1825–26. However, it is clear that in discrimination cases, statistical data should be closely related to the specific issues presented. *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir.1975). The Court finds the statistical data in this case to be insufficiently related to the specific issues presented. The only data presented with respect to the specific issue of promotion to department head fails to bear out Ms. Kachel's contention of discrimination.

The Court accordingly concludes that even assuming Ms. Kachel has satisfied her burden of proof as to a prima facie case, she has failed to satisfy her continuing burden of persuasion that the employer's basis for promoting Mr. Berumen rather than her was anything but a legitimate non-discriminatory reason. The City of Pueblo has produced evidence which allows the Court to rationally conclude that the decision was not motivated by discrimination. Plaintiff has failed to satisfy her burder of proving that the employer's legitimate reason was a pretext. Accordingly, the Court rejects Ms. Kachel's claim with respect to disparate treatment.

### B. *Disparate or Adverse Impact*

Under the disparate impact theory, a prima facie case is established by showing that a particular job requirement or standard of selection operates to select applicants for hire or promotion in a pattern significantly different from that of the pool of applicants. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); *Bauer v. Bailar*, 647 F.2d 1037 (10th Cir.1981). Under this theory a prima facie case is established even if the job requirement at issue is facially neutral and even if no showing of intentional discrimination is made. *International Bro. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). After such a prima facie case has been made out the burden shifts to the employer to demonstrate that the job requirement involved has a manifest relationship to the employment in question. *Griggs v. Duke Power Co.*, 401

U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The plaintiff then has an opportunity to respond by showing that other methods or standards of selection for hire or promotion would serve the employer's legitimate interests in obtaining qualified employees without resulting in the disproportionate exclusion of a particular group. *Bauer v. Bailar*, 647 F.2d at 1045.

Statistical evidence showing a general pattern of discrimination is relevant to a claim of disparate impact, as is the presence of subjective criteria in the employer's decisionmaking. *Bauer v. Bailar*, 647 F.2d at 1045. However, disparate impact should be measured against the actual pool of applicants or eligible employees. *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir.1983). The significance of statistical evidence in any given case depends on all the surrounding facts and circumstances. *Teamsters v. United States*, 431 U.S. at 340, 97 S.Ct. at 1856–57. In discrimination cases, statistical evidence should be closely related to the issues in the case. *Bauer v. Bailar*, 647 F.2d at 1045; *Taylor v. Safeway Stores, Inc.*, 524 F.2d at 272.

Under the theory of disparate impact, a prima facie case is established even in the face of a showing that the job requirement at issue is facially neutral and even in the absence of a showing of intentional discrimination. *Teamsters v. United States*, 431 U.S. at 349, 97 S.Ct. at 1861–62. After such prima facie case has been made, the employer has an opportunity to demonstrate that the job requirement involved has a manifest relationship with the employment in question. *Griggs v. Duke Power Co.*, 401 U.S. at 432, 91 S.Ct. at 854. Here, Ms. Kachel had the opportunity to respond to Defendant's showing that the promotion and the standards utilized, although subjective, legitimately served the City's interest in obtaining a qualified person without resulting in discrimination.

Plaintiff alleges that the City of Pueblo regularly and purposefully treated women less favorably than men in its promotion practices. The disparity allegedly

involves the refusal to promote women on an equal basis with men, particularly with respect to the senior departmental head positions. Thus, the ultimate factual issues are whether there was any pattern or practice of such disparate treatment and, if so, whether the disparate treatment was premised upon sex. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817. It is Plaintiff's burden to prove more than a mere occurrence of isolated, accidental or sporadic discriminatory acts. Under a disparate impact theory, she must establish by a preponderance of the evidence that gender discrimination was the standard operating procedure, the regular rather than the unusual practice. *Teamsters v. United States*, 431 U.S. at 336, n. 16, 97 S.Ct. at 1855, n. 16.

■■■■■ As Judge Doyle stated in *Bauer v. Bailar*, 647 F.2d at 1042, "one object of this approach (disparate impact) is to restrict the use of subjective judgments in hiring and promotion where such a practice results over an extended period in the disproportionate non-selection of members of an aggrieved group." (citations omitted). Subjective hiring and promotion decisions, particularly when made in the absence of specific standards and guidelines, may not go unexplained if there is a significantly disproportionate non-selection of members of a group over an extended period. *Bauer v. Bailar*, 647 F.2d at 1043. This is not the case here, even conceding that Plaintiff has proved the use of subjective judgments in the promotion in question. Plaintiff has not proved that the practice resulted in a disproportionate selection of males over females. Title VII does not impose on an employer the duty to favor a minority to correct imbalances. *EEOC v. Navajo Refining Co.*, 593 F.2d 988, 991 (10th Cir.1979). Congress did not intend by Title VII to guarantee a job to every person regardless of qualifications. Title VII does not require that any person be hired (or promoted) simply because he/she is a member of a minority group. "Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." *Griggs v. Duke Power*, 401 U.S. at 431, 91 S.Ct. at

853. An employer has discretion to chose among equally qualified candidates provided the decision is not based upon unlawful criteria. *Texas v. Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096–97.

As in *Bauer v. Bailar*, unquestionably a great deal of subjective judgment is present in the system here employed. However, there was no evidence presented at trial to show that subjective considerations have been employed systematically to exclude women from supervisory positions. Accordingly, Ms. Kachel's theory of recovery based on disparate impact is rejected.

C. *Plaintiff's Pendant Claim of Breach of Contract*

■■■ Finally, Ms. Kachel claims that the Pueblo City Charter created a contractual right that she be promoted to the job in question based simply upon the fact that she was already employed in the respective department at the time of the appointment. Section 4–7 of the City Charter, in evidence as Plaintiff's Exhibit 25, states as follows:

§ 4–7 Directors of Departments—Each department shall be headed by a director appointed by and subject to the City Manager.

All persons appointed as directors of bureaus or departments shall be selected on the basis of their training, experience, qualifications, and fitness for the particular job to be performed. First consideration shall be given to persons already employed in the respective department at the time of the appointment.

Ms. Kachel's position with regard to this claim assumes an absolute contractual right to promotion over all others regardless of qualifications. In the proposed Finding, Legal Discussion, Conclusion and Order tendered by Plaintiff prior to the case, Ms. Kachel proffers a finding that the Charter of the City of Pueblo specifically sets forth a criteria to be considered in the selection of a department head. Plaintiff reasons that since she was the only applicant who was working within the department when the vacancy existed, the Defendant violated the provisions of the Charter

by selecting Mr. Berumen, a person who had "no previous working experience within this department and who worked in an unrelated field, *i.e.*, the auditing department."

The evidence supports the City Manager's position that Ms. Kachel simply could not match all of his qualifications and accordingly was not selected, even after being given first consideration. The clear wording of the Charter requires that all persons appointed be selected on the basis of training, experience, qualification, and fitness for the particular job to be performed.

Based on the findings above, the Court declines to conclude that the City of Pueblo appointed Mr. Berumen to the directorship other than on the basis of his "training, experience, qualifications, and fitness for the particular job to be performed." Accordingly, the Court rejects the pendent claim of breach of contract.

## ORDER

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that judgment shall enter for the Defendant, City of Pueblo, and against the Plaintiff, Beverly J. Kachel, on all claims.

IT IS FURTHER ORDERED that each party shall bear its own costs and fees.

IT IS FURTHER ORDERED that judgment shall forthwith enter according to this Order pursuant to Rules 52(a) and 58 of the Federal Rules of Civil Procedure.

DONE AND ORDERED.